IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FORT SMITH DIVISION

JAMEY D. RELEFORD                                                                                           PLAINTIFF

        v.                                     Civil No. 11-2095

MICHAEL J. ASTRUE, Commissioner of
Social Security Administration                                                                        DEFENDANT

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

**I.     Factual and Procedural Background**

      Plaintiff, Jamey D. Releford, brings this action seeking judicial review, pursuant to 42 U.S.C. § 405(g), of a decision of the Commissioner of the Social Security Administration ("Commissioner") denying her applications for disability insurance benefits ("DIB") and supplemental security income ("SSI") under Titles II and XVI of the Social Security Act ("the Act").

      Plaintiff protectively filed her applications on September 5, 2008, alleging a disability onset date of January 1, 2005, due to migraines, back and neck pain, diabetes mellitus, urinary stress incontinence, balance problems, obesity, hypertension, hearing loss, recurrent ear infections, sinusitis, and depression. Tr. 66, 169, 182. On the alleged onset date, Plaintiff was thirty six years old with a tenth grade education. Tr. 9, 73, 175.

      Plaintiff's applications were denied at the initial and reconsideration levels. Tr. 80-86, 99-102. At Plaintiff's request, an administrative hearing was held on November 10, 2009. Tr. 22-58. Plaintiff was present at this hearing and represented by counsel. The ALJ rendered an unfavorable decision on January 27, 2010, finding Plaintiff was not disabled within the meaning of the Act. Tr. 63-75. Subsequently, the Appeals Council denied Plaintiff's Request for Review on March 22,

2011, thus making the ALJ's decision the final decision of the Commissioner. Tr. 1-6. Plaintiff now seeks judicial review of that decision.

**II.     Medical History**

    A.  St. Edward Mercy Medical Center

On August 14, 2005, Plaintiff was admitted to St. Edward Mercy Medical Center ("St. Edward's) after she was involved in a motor vehicle accident. Tr. 318-320. Plaintiff did not lose consciousness or suffer head trauma. Tr. 318. However, she reported neck pain. Tr. 318. On examination, Plaintiff had tenderness of the cervical spine and guarded range of motion. Tr. 318. X-rays of Plaintiff's cervical spine revealed mild reversal of the normal cervical lordosis and mild degenerative dorsal spondylitic ridging at C4-5 and C5-6, but were otherwise normal. Tr. 318, 320. Jim R. Herndon, D.O., assessed Plaintiff with cervical strain and prescribed anti-inflammatories, pain medication, and muscle relaxants. Tr. 318-319.

    B.  Total Rehabilitation, Inc.

Plaintiff was involved in a second motor vehicle accident on July 5, 2006. Tr. 347. She was referred for physical therapy five times weekly at Total Rehabilitation, Inc., for cervical and lumbar back pain. Tr. 323-350. At the time of discharge, Plaintiff had met all her physical therapy goals. Tr. 323-328. Plaintiff's pain and range of motion improved by fifty percent in two weeks. Tr. 324.

    C.  Sparks Regional Medical Center

On April 24, 2008, Plaintiff had an HbA1c level[1] of 6.0, with scores between 4.1-5.7 considered within the normal range. Tr. 463. On October 18, 2008, Plaintiff presented to Sparks

---

[1] HbA1c levels reflect glucose control over the preceding two to three month period. THE MERCK MANUAL OF DIAGNOSIS AND THERAPY 873 (Robert S. Porter, M.D., et al., eds., 19th ed. 2011).

Regional Medical Center ("Sparks") with complaints of epigastric pain radiating into her chest and back. Tr. 389-408. On examination, Plaintiff's heart had regular rhythm and rate, with no extra heart sounds or murmurs. Tr. 401. Plaintiff exhibited some mild right upper tenderness in her abdomen. Tr. 401. An electrocardiogram yielded normal results. Tr. 401. Chest x-rays were normal. Tr. 406. A gallbladder ultrasound was normal. Tr. 408. Plaintiff's blood sugar level was high at 170 mg/Dl. Tr. 401-403. Plaintiff was diagnosed with abdominal pain and discharged in stable condition. Tr. 402.

On May 11, 2009, Plaintiff was treated at Sparks Preferred Medical Care for tonsillitis and left otitis media with perforation. Tr. 499-501. Roy Russell, M.D., prescribed Levaquin and Lorcet. Tr. 499.

    D.  <u>Van Hoang, M.D.</u>

On October 30, 2008, Plaintiff saw Van Hoang, M.D., for a consultative physical evaluation. Tr. 352-356. Plaintiff reported a history of migraines, balance problems, Type II diabetes mellitus, stress urinary incontinence, muscle spasms, an opening at the base of her skull, and hypertension. Tr. 352. Plaintiff weighed 229 pounds and was 5'3. Tr. 353. Dr. Hoang noted that she was remarkably obese. Tr. 354. On examination, Plaintiff could hear normal conversation. Tr. 354. She had normal range of motion in her shoulders, elbows, wrists, hands, hips, knees, and ankles. Tr. 354. She also had normal range of motion in her cervical and lumbar spine. Tr. 354. Dr. Hoang noted no muscle spasms and straight-leg raising was negative on both sides. Tr. 355. Plaintiff had no muscle weakness or atrophy and no sensory abnormalities. Tr. 355. She had full grip strength in both hands. Tr. 355. Plaintiff was able to hold a pen and write, touch her fingertips to her palm, oppose her thumb to her fingers, pick up a coin, stand/walk without assistive devices, walk on her

heels and toes (barely), and squat/arise from a squatting position, with support. Tr. 355. Dr. Hoang noted that Plaintiff's gait was unstable due to marked obesity. Tr. 355. He diagnosed Plaintiff with frequent migraines, Type II diabetes, stress urinary incontinence, postural dizziness/lost balance, hypertension, and morbid obesity. Tr. 356. Dr. Hoang determined Plaintiff had moderately severe physical limitations for work purposes. Tr. 356.

    E. Agency Consultants

In a Physical Residual Functional Capacity ("RFC") assessment dated November 6, 2008, Alice M. Davidson, M.D., a non-examining agency consultant, determined Plaintiff could occasionally lift/carry twenty pounds, frequently lift/carry ten pounds, stand/walk for a total of about six hours in an eight-hour workday, sit for a total of about six hours in an eight-hour workday, and push/pull within those limitations. Tr. 359-366. She found no postural, manipulative, visual, communicative, or environmental limitations. Tr. 361-363.

    F. Cornerstone Clinic

On October 28, 2008, Plaintiff went to a regular check up appointment concerning her hypertension and anxiety. Tr. 446-447. Plaintiff's medications included Metformin, Methadopa, Metoclopramide, ibuprofen, and Diovan. Tr. 446. Plaintiff's blood pressure was 148/97 and her blood sugar was 148 mg/dL. Tr. 446-449. On December 1, 2008, Plaintiff was treated for a sore throat, cough, and back pain. Tr. 443-444. She was given Ultram for back pain. Tr. 444.

    G. Edmund Kennedy, M.D.

Plaintiff has a history of chronic sinus problems and ear infections. Tr. 235-240, 296-303, 499-501, 544-552. On April 6, 2005, Plaintiff underwent an endoscopic septoplasty for a deviated septum and chronic sinusitis. Tr. 284-294, 304-316. Following surgery, Plaintiff continued to have

chronic sinusitis and ear infections. On March 18, 2009, Plaintiff reported decreased hearing on the left. Tr. 550. On examination, Dr. Kennedy noted that the left typanic membrane was slightly thick with a tube in place and a small amount of mucus. Tr. 550. Tuning fork testing did not reveal a conductive loss. Tr. 550. Dr. Kennedy scheduled an audiogram and recommended removal of the left tube in Plaintiff's left ear. Tr. 551.

On April 7, 2008, Plaintiff had an audiologic evaluation performed. Tr. 507-508. Pure tone testing revealed moderate sensorineural hearing loss in the right ear and moderately-severe to severe sensorineural hearing loss in the left ear. Tr. 507. Sound field testing indicated good recognition in quiet places and poor recognition in noisy places. Tr. 507. Speech discrimination revealed excellent recognition at amplified levels. Tr. 507. It was noted that Plaintiff would benefit from the use of hearing aides. Tr. 507.

On April 14, 2009, Dr. Kennedy removed a tube from Plaintiff's left ear and noted that she had a small perforation with slight granulation tissue. Tr. 549. In September 2009, Plaintiff was treated for an ear infection. Tr. 549. Examination revealed a small amount of mucopus on the surface of a dull, thick tympanic membrane on the left with some granulation tissue on the surface, but no perforation. Tr. 549. Dr. Kennedy prescribed antibiotic drops and advised Plaintiff to keep her ear dry. Tr. 549.

H.  George H. Tompkins, D.O.

In October and November 2009, Plaintiff was treated by George H. Tompkins, D.O. Tr. 509-543. On October 7, 2009, Plaintiff reported migraines, balance problems, tingling feet, and back pain. Tr. 517. On examination, Plaintiff had limited range of motion in her head and neck and heel pain. Tr. 517. X-rays of Plaintiff's left foot revealed small calcaneal spurs at the attachment of the

Achilles tendon and plantar fascia. Tr. 538. X-rays of Plaintiff's cervical spine revealed a mild old wedge deformity at C5, but no other abnormalities. Tr. 524. X-rays of Plaintiff's lumbar spine were unremarkable. Tr. 523. Plaintiff's HbA1c test revealed a level of 8.0, which was considered high. Tr. 537. Dr. Tompkins diagnosed Plaintiff with noninsulin-dependent diabetes mellitus, obesity, hypertension, major depression, lumbar and cervical degenerative joint disease, and polyarthralgia. Tr. 513-517.

Plaintiff was treated conservatively with physical therapy for her neck and back pain. Tr. 511-513. On November 4, 2009, Plaintiff complained of headaches, hand weakness, and poor grip. Tr. 510. Dr. Tompkins diagnosed Plaintiff with migraines and right meralgia paresthetica. Tr. 510. On November 12, 2009, Plaintiff had gained ten pounds and felt that her diabetes was not controlled on Metformin. Tr. 509. As a result, Dr. Tompkins switched Plaintiff to Actos. Tr. 509.

On November 9, 2009, Dr. Tompkins completed a Physical RFC assessment, in which he determined Plaintiff could sit for twenty to thirty minutes at a time and for a total of four hours in an eight-hour workday, stand for five minutes at a time and for a total of twenty to thirty minutes in an eight-hour workday, and walk for ten minutes at a time and for a total of thirty minutes in an eight-hour workday. Tr. 502-506. Dr. Tompkins found that Plaintiff needed assistive devices to stand and walk and would need rest breaks at hourly intervals or less. Tr. 504. He determined Plaintiff could frequently lift/carry up to three pounds and occasionally lift up to ten pounds. Tr. 504. Dr. Tompkins found Plaintiff could occasionally push/pull, reach, grasp, finger, and climb ramps, rarely work in extended position or above shoulder level, or climb stairs, and never work overhead, bend, squat, crawl, stoop, crouch, kneel, balance, twist, or climb ladders or scaffolds. Tr. 505. Furthermore, he determined Plaintiff could never be exposed to unprotected heights, dangerous

moving machinery, or vibrating tools, had marked restrictions concerning exposure to temperature extremes, and had moderate to marked restrictions concerning respiratory irritants, such as dust fumes, gases, odor, and wind, and driving/riding in automotive equipment. Tr. 506.

Dr. Tompkins identified Plaintiff's impairments as polyarthralgia, morbid obesity, hypertension, polycystic ovary syndrome, lumbar degenerative joint disease, noninsulin-dependent diabetes mellitus, uncontrolled, bilateral calcium heel spurs, major depression, spondylosis/bone spurs, recurrent migraine headaches, right meralgia paresthetica, cervical and thoracic strain, and degenerative joint disease of the right knee. Tr. 502-503. He determined Plaintiff could perform no more than sedentary work. Tr. 503.

I. Robert L. Spray, Jr., Ph.D.

Plaintiff submitted additional evidence to the Appeals Council, which consisted of a psychological evaluation, dated April 6, 2010, from Robert L. Spray, Ph.D. Tr. 9-16. Plaintiff reported sleeplessness, migraines, crying spells, trouble driving, and depression. Tr. 10. She reported no history of mental health treatment, but had taken Zoloft, Paxil, and Cymbalta for depression. Tr. 10. On examination, Plaintiff's affect was appropriate and variable. Tr. 12. She was tearful and appeared distressed. Tr. 12. Speech was spontaneous with no illogical, odd, vague, or circumstantial speech. Tr. 11. Plaintiff exhibited no evidence of hallucinatory experiences, but reported marked intrusive thoughts related to past traumatic events. Tr. 11. She reported fear associated with driving due to a past motor vehicle accident. Tr. 11-12. Plaintiff also reported instances of hitting herself in the head when upset. Tr. 12. Dr. Spray diagnosed Plaintiff with major depression, post-traumatic stress disorder ("PTSD"), and psychological factors affecting chronic pain. Tr. 12.

In a Mental RFC assessment, Dr. Spray found severe limitations in Plaintiff's ability to maintain attention and concentration for extended periods of time, maintain regular attendance, be punctual within customary tolerances, complete a normal workday and workweek without interruptions from psychologically based symptoms, perform without an unreasonable number or length of rest periods, and demonstrate reliability, and marked limitations in Plaintiff's ability to interact with supervisors, deal with work stresses, perform activities within a schedule, make simple work-related decisions, perform at a consistent pace, avoid undue constriction of interests, travel in unfamiliar places or use public transportation, behave in an emotionally stable manner, deal with the general public, ask simple questions and request assistance, accept instructions and respond appropriately to criticism from supervisors, and get along with coworkers or peers without distracting them or exhibiting behavioral extremes. Tr. 13-16. Dr. Spray found moderate limitations in Plaintiff's ability to relate to coworkers, understand, remember, and carry out detailed or complex instructions, sustain an ordinary routine without special supervision, work in coordination with or proximity to others without being distracted by them, set realistic goals, make plans independently of others, respond and adjust to the use of new and unfamiliar tools and/or machines, and maintain socially appropriate behavior and adhere to basic standards of neatness, and mild limitations in Plaintiff's ability to follow work rules, function independently, remember locations and work-like procedures, understand, remember, and carry out very short and simple instructions, respond appropriately to changes in work setting or work procedures, and be aware of normal hazards and take appropriate precautions. Tr. 13-16.

### III.     Applicable Law

The Court's role on review is to determine whether the Commissioner's findings are supported by substantial evidence in the record as a whole. *Ramirez v. Barnhart*, 292 F.3d 576, 583 (8th Cir. 2003). "Substantial evidence is less than a preponderance, but enough so that a reasonable mind might accept it as adequate to support a conclusion." *Estes v. Barnhart*, 275 F.3d 722, 724 (8th Cir. 2002) (quoting *Johnson v. Apfel*, 240 F.3d 1145, 1147 (8th Cir. 2001)). In determining whether evidence is substantial, the Court considers both evidence that detracts from the Commissioner's decision as well as evidence that supports it. *Craig v. Apfel*, 212 F.3d 433, 435-36 (8th Cir. 2000) (citing *Prosch v. Apfel*, 201 F.3d 1010, 1012 (8th Cir. 2000)). If, after conducting this review, "it is possible to draw two inconsistent positions from the evidence and one of those positions represents the [Secretary's] findings," then the decision must be affirmed. *Cox v. Astrue*, 495 F.3d 614, 617 (8th Cir. 2007) (quoting *Siemers v. Shalala*, 47 F.3d 299, 301 (8th Cir. 1995)).

To be eligible for disability insurance benefits, a claimant has the burden of establishing that she is unable to engage in any substantial gainful activity due to a medically determinable physical or mental impairment that has lasted, or can be expected to last, for no less than twelve months. *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir. 2001); 42 U.S.C. § 423(d)(1)(A). The Commissioner applies a five-step sequential evaluation process to all disability claims: (1) whether the claimant is engaged in substantial gainful activity; (2) whether the claimant has a severe impairment that significantly limits her physical or mental ability to perform basic work activities; (3) whether the claimant has an impairment that meets or equals a disabling impairment listed in the regulations; (4) whether the claimant has the RFC to perform her past relevant work; and (5) if the claimant cannot perform her past work, the burden of production then shifts to the Commissioner

to prove that there are other jobs in the national economy that the claimant can perform given her age, education, and work experience. *Pearsall*, 274 F.3d at 1217; 20 C.F.R. § 404.1520(a), 416.920(a). If a claimant fails to meet the criteria at any step in the evaluation, the process ends and the claimant is deemed not disabled. *Eichelberger v. Barnhart*, 390 F.3d 584, 590-91 (8th Cir. 2004).

### IV.   ALJ's Determination

At step one, the ALJ determined Plaintiff had not engaged in substantial gainful activity at any point since January 1, 2005, the alleged onset date. Tr. 68. At step two, the ALJ found Plaintiff suffered from diabetes mellitus, hypertension, migraines, obesity, and depression, all of which were considered severe impairments under the Act. Tr. 68-69. At step three, he determined Plaintiff did not have an impairment or combination of impairments that met or medically equaled a listed impairment. Tr. 69-71.

At step four, the ALJ found Plaintiff had the RFC to lift/carry ten pounds occasionally and less than ten pounds frequently, sit for six hours in an eight-hour workday, stand/walk for two hours in an eight-hour workday, and occasionally climb, balance, crawl, kneel, stoop, and crouch. Tr. 71-73. Mentally, the ALJ determined Plaintiff could perform work in which interpersonal contact is incidental to the work performed, complexity of tasks is learned by rote, with few variables and little judgment required, and supervision is simple, direct, and concrete. Tr. 71-73. The ALJ also found Plaintiff moderately limited[2] in her ability to maintain concentration, persistence, and pace, function socially, and respond to usual work situations and routine work changes. Tr. 71-73.

---

[2] "Moderately limited" means more than a slight limitation, but the person can perform in a satisfactory manner. Tr. 71.

With these limitations, the ALJ found Plaintiff could not perform her past relevant work. Tr. 73. However, after receiving vocational expert testimony, the ALJ found jobs existing in significant numbers in the national economy that Plaintiff could perform.[3] Accordingly, the ALJ determined Plaintiff was not under a disability from January 1, 2005, the alleged onset date, through January 27, 2010, the date of the decision. Tr. 74-75.

V.   **Discussion**

On appeal, Plaintiff contends the ALJ erred by: (A) failing to find her neck and back pain and hearing loss to be severe impairments; (B) improperly determining her RFC; and (C) posing an improper hypothetical to the vocational expert. *See* Pl.'s Br. 8-16. For the following reasons, the undersigned finds that substantial evidence supports the ALJ's decision.

A.   Severe Impairments

Substantial evidence supports the ALJ's determination that Plaintiff's neck and back pain and hearing loss were non-severe. Step two of the regulations involves a determination, based on the medical evidence, whether the claimant has an impairment or combination of impairments that is severe. *See* 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). A severe impairment is one which significantly limits a claimant's physical or mental ability to perform basic work activities. 20 C.F.R. § 404.1520(c). "An impairment is not severe if it amounts only to a slight abnormality that would not significantly limit the claimant's physical or mental ability to do basic work activities." *Kirby v. Astrue*, 500 F.3d 705, 707 (8th Cir. 2007) (citing *Bowen v. Yuckert*, 482 U.S. 137, 153 (1987)(O'Connor, J., concurring)). The sequential evaluation process may be terminated at step two

---

[3] The ALJ determined Plaintiff could perform the requirements of representative occupations such as production worker, of which there are 1,200 jobs regionally and 200,000 jobs nationally, cutter and paster, of which there are 500 jobs regionally and 132,000 jobs nationally, and inspector, of which there are 1,300 jobs regionally and 315,000 jobs nationally. Tr. 50-58, 74.

only when the claimant's impairment or combination of impairments would have "no more than a minimal impact on her ability to work." *Caviness v. Massanari,* 250 F.3d 603, 605 (8th Cir.2001), *citing Nguyen v. Chater,* 75 F.3d 429, 430-31 (8th Cir.1996).  Although a claimant has the burden of establishing a severe impairment or impairments, the burden at this stage is not great. *Caviness*, 250 F.3d at 605.

The objective medical evidence does not suggest that Plaintiff's back and neck pain significantly limit her work abilities. *Smith v. Shalala*, 987 F.2d 1371, 1374 (8th Cir. 1993) (citing *Matthews v. Bowen*, 879 F.2d 422, 425 (8th Cir. 1989)). X-ray imaging of Plaintiff's cervical spine, dated October 8, 2009, revealed a mild old wedge deformity at C5, but no other abnormalities. Tr. 524. X-ray imaging of Plaintiff's lumbar spine was unremarkable. Tr. 523. Dr. Hoang's physical evaluation revealed full range of motion in Plaintiff's cervical and lumbar spine and no muscle spasms.  Tr. 354.  In fact, Dr. Hoang attributed Plaintiff's gait instability and difficulty squatting/arising to marked obesity rather than neck or back limitations. Tr. 355.

Additionally, Plaintiff was treated conservatively for her neck and back pain. *See Thomas v. Barnhart*, 130 Fed. Appx. 62, 63-64 (8th Cir. 2005) (conservative treatment was inconsistent with claimant's allegations of disabling pain). She received physical therapy following a motor vehicle accident that occurred in July 2006. Tr. 347. Within two weeks, Plaintiff's pain and range of motion had improved by fifty percent. Tr. 324. By the end of therapy, Plaintiff had met all her goals. Tr. 323. Plaintiff's conservative treatment history and the objective medical evidence are not consistent with a severe impairment. Accordingly, the ALJ did not err in finding Plaintiff's alleged back and neck pain to be non-severe.

Plaintiff has a history of recurrent ear infections which have caused hearing loss. An April 2009 audiogram revealed moderate sensorineural hearing loss in the right ear and moderately-severe to severe sensorineural hearing loss in the left ear. Tr. 507. However, sound field testing indicated good recognition in quiet surroundings and excellent recognition at amplified levels. Tr. 507. Moreover, Dr. Hoang noted that Plaintiff could hear normal conversation and there is no indication that Plaintiff had any hearing difficulties at the administrative hearing. Tr. 354. Finally, the undersigned notes that although the ALJ did not find Plaintiff's back and neck pain and hearing loss to be severe, he nevertheless took these impairments into consideration when determining Plaintiff's RFC. *See* 20 C.F.R. § 404.1545(a)(2) (ALJ will consider both severe and non-severe impairments in determining a claimant's residual functional capacity). For these reasons, the undersigned finds that substantial evidence supports the ALJ's severity determination.

  B. <u>RFC Determination</u>

At the fourth step of the evaluation, a disability claimant has the burden of establishing his RFC. *Eichelberger*, 390 F.3d at 591; *Masterson v. Barnhart*, 363 F.3d 731, 737 (8th Cir. 2004). A claimant's RFC is the most she can do despite her limitations. 20 C.F.R. § 404.1545(a)(1). The ALJ determines a claimant's RFC based on "all relevant evidence, including medical records, observations of treating physicians and others, and the claimant's own descriptions of his or her limitations." *Masterson*, 363 F.3d at 737. The Eighth Circuit has stated that "a claimant's residual functional capacity is a medical question." *Lauer v. Apfel*, 245 F.3d 700, 704 (8th Cir. 2001). Thus, although the ALJ bears the primary responsibility for determining a claimant's RFC, there must be "some medical evidence" to support the ALJ's determination. *Eichelberger*, 390 F.3d at 591; *Dykes v. Apfel*, 223 F.3d 865, 867 (8th Cir 2000).

1. Physical Impairments

Plaintiff argues that the ALJ improperly dismissed Dr. Tompkins' RFC assessment. *See* Pl.'s Br. 12-14. A treating physician's opinion is given controlling weight if it "is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence" in a clamant's record. *Tilley v. Astrue*, 580 F.3d 675, 679 (8th Cir. 2009); 20 C.F.R. § 404.1527(d)(2). The record must be evaluated as a whole to determine whether the treating physician's opinion should be controlling. *Reed v. Barnhart*, 399 F.3d 917, 920 (8th Cir. 2005). A treating physician's evaluation may be disregarded where other medical assessments "are supported by better or more thorough medical evidence, or where a treating physician renders inconsistent opinions that undermine the credibility of such opinions." *Id.* at 920-21 (quoting *Prosch*, 201 F.3d at 1013). In any case, an ALJ must always "give good reasons" for the weight afforded to the treating physician's opinion. 20 C.F.R. § 404.1527(d)(2).

The ALJ gave specific reasons for the weight afforded to Dr. Tompkins' opinion. First, Dr. Tompkins treated Plaintiff for only one month prior to completing his RFC assessment. *See Casey v. Astrue,* 503 F.3d 687, 692 (8th Cir. 2007) (when deciding "how much weight to give a treating physician's opinion, the ALJ must also consider the length of the treatment relationship and the frequency of examinations"). Additionally, the ALJ noted that many of the specific limitations in Dr. Tompkins' RFC assessment were inconsistent with the medical evidence as a whole. *See Hutton v. Apfel*, 175 F.3d 651, 655 (8th Cir. 1999) (absence of objective medical evidence to support claimant's complaints). However, the ALJ agreed with Dr. Tompkins' ultimate conclusion that Plaintiff could perform sedentary work. Tr. 73. The ALJ's determination is consistent with Dr. Hoang's assessment and with the other medical evidence of record. Accordingly, the undersigned

concludes that substantial evidence supports the ALJ's RFC determination. *Roberts v. Apfel,* 222 F.3d 466, 469 (8th Cir. 2000) (ALJ bears the primary responsibility for assessing a claimant's residual functional capacity based on all relevant evidence).

### 2. Mental Impairments

Plaintiff argues that the ALJ failed to develop the record concerning her mental impairments. *See* Pl.'s Br. 11. The ALJ has a duty to fully and fairly develop the record, even if a claimant is represented by counsel. *Wilcutts v. Apfel*, 143 F.3d 1134, 1137 (8th Cir. 1998). "It is well-settled that the ALJ's duty to fully and fairly develop the record includes the responsibility of ensuring that the record includes evidence addressing the alleged impairments at issue from either a treating or examining physician." *Nevland v. Apfel,* 204 F.3d 853, 858 (8th Cir.2000). While the Secretary is under no duty to go to inordinate lengths to develop a claimant's case, he must "make an investigation that is not wholly inadequate under the circumstances." *Battles v. Shalala*, 36 F.3d 43, 45 (8th Cir. 1994) (quoting *Miranda v. Secretary of Health, Educ. & Welfare*, 514 F.2d 996, 998 (1st Cir. 1975)). There is no bright-line test for determining when the Secretary has failed to adequately develop the record; the determination must be made on a case-by-case basis. *Battles*, 36 F.3d at 45 (quoting *Lashley v. Secretary of Health & Human Serv.,* 708 F.2d 1048, 1052 (6th Cir.1983)).

Plaintiff has no history of mental health treatment. *See Kirby v. Astrue*, 500 F.3d 705, 708-09 (8th Cir. 2007) (claimant had not sought formal treatment by a psychiatrist, psychologist, or other mental health care professional). In her initial paperwork, Plaintiff made no specific mention of depression other than she had "problems with anger and dealing with other people." Tr. 169. Despite having insurance, she never sought formal treatment for her alleged depression or consistently took medication. *Id.* Additionally, Plaintiff's attorney never requested a psychological

evaluation and only procured one following the ALJ's adverse decision. As such, it appears that Plaintiff saw Dr. Spray to bolster her claim for disability benefits rather than to obtain medical treatment. *Shannon v. Chater*, 54 F.3d 484, 486 (8th Cir. 1995). Moreover, Dr. Spray's evaluation took place three months after the ALJ's decision and is not consistent with Plaintiff's overall lack of treatment. *See Pyland v. Apfel,* 149 F.3d 873, 878 (8th Cir. 1998) (evidence outside the relevant time period cannot serve as the only support for a disability claim).

The ALJ had sufficient evidence to rely on in making his mental RFC determination. *See Tellez v. Barnhart*, 403 F.3d 953, 956-57 (8th Cir. 2005) (rejecting argument that ALJ failed to fully and fairly develop the record where there was no indication that the ALJ was unable to make RFC assessment). Furthermore, Plaintiff has demonstrated no prejudice or injustice as a result of this alleged failure to develop the record. *See Onstad v. Shalala*, 999 F.2d 1232, 1234 (8th Cir. 1993) (unfairness or prejudice is necessary for a reversal due to failure to develop the record). For these reasons, substantial evidence supports the ALJ's determination regarding Plaintiff's mental limitations.

    C. <u>Hypothetical Question</u>

Finally, Plaintiff argues that the ALJ's hypothetical question did not accurately reflect her limitations. *See* Pl.'s Br. 14-15. A hypothetical question posed to the vocational expert is sufficient if it sets forth impairments supported by substantial evidence and accepted as true by the ALJ. *Goff*, 421 F.3d at 794 (citing *Hunt v. Massanari,* 250 F.3d 622, 625 (8th Cir. 2001)). The ALJ may properly exclude any alleged limitation or impairments he rejects as untrue or unsubstantiated. *Hunt*, 250 F.3d at 625. Here, the ALJ's hypothetical to the VE was proper, as it mirrored the limitations ultimately adopted by the ALJ. *Roe v. Chater*, 92 F.3d 672, 676 (8th Cir. 1996). For these reasons,

substantial evidence supports the ALJ's step five determination.

VI.   **Conclusion**

Accordingly, having carefully reviewed the record, the undersigned finds that substantial evidence supports the ALJ's decision and recommends that the decision be affirmed and Plaintiff's case be dismissed with prejudice.  **The parties have <u>fourteen</u> days from receipt of the Report and Recommendation in which to file written objections pursuant to 28 U.S.C. § 636(b)(1).  The failure to file timely objections may result in waiver of the right to appeal questions of fact.  The parties are reminded that objections must be both timely and specific to trigger de novo review by the district court.**

DATED this 1st day of May 2012.

*/s/ J. Marschewski*
HONORABLE JAMES R. MARSCHEWSKI
CHIEF UNITED STATES MAGISTRATE JUDGE